No.   92-075

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
WILLIAM RICHARD CARAS,

        Petitioner and Respondent,

   and

LAURI CHRISTINE CARAS,

        Respondent and Appellant.


APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

        Noel K. Larrivee, Larrivee Law Offices, Missoula,
        Montana

     For Respondent:

        Richard  Reep,  Reep,  Spoon  &  Gordon,  Missoula,
        Montana

**FILED**

AUG 6 - 1992

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   June 25, 1992

Decided:   August 6, 1992

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District Court, in and for the County of Missoula, the Honorable Ed McLean presiding. Lauri Christine Caras appeals from the final decree of dissolution which was entered by the Fourth Judicial District Court, Missoula County, on November 22, 1991, which converted the prior decree of legal separation to a decree of dissolution, and incorporated the parties' prior marital and property settlement agreement by reference. We reverse.

The sole issue on appeal is whether the marital and property settlement agreement executed by the parties should be set aside on the grounds that the agreement is unconscionable.

In August of 1978, William Richard Caras (William) and Lauri Christine Caras (Lauri) were married in California. Two sons were born of the marriage; David, born June 9, 1980 and Nicholas, born November 16, 1983.

In December 1988, the parties' marriage began to deteriorate and William mentioned divorce but Lauri refused. She showed signs of depression, withdrawal and weight loss throughout 1989, and in 1990 family and friends intervened when Lauri was totally withdrawn. Lauri's condition prompted William to schedule a marriage counseling appointment for the couple. They attended just one session as a couple; Lauri, however, continued individual counseling between April and June 1990, in hopes that the

counseling would aid in a reconciliation with William. In July 1990, Lauri suggested, and the parties later agreed, that she should attend school in Franklin, Tennessee. Although William was in favor of Lauri's schooling, he still desired a divorce. Lauri hoped the change would avoid divorce and help the marriage. About this time, the couple began the process of establishing a Marital and Property Settlement Agreement (the Agreement). To that end, William contacted attorney Rick Baskett (Baskett) who previously represented him in various business matters, and discussed with him the specifics of the Agreement. However, due to William and Baskett's mutual social and other associations, Baskett referred William to another attorney, Rick Reep.

Lauri met with Baskett individually after determining that a divorce was too drastic a step and decided to attempt a legal separation. Lauri alleges that Baskett told her she was possibly entitled to a larger property settlement than what had been drafted in the Agreement, but suggested that in order to maintain a friendly relationship with William and not to impact his business in a negative manner, she should sign the Agreement.

The Agreement addressed various matters including custody, visitation, maintenance, and property distribution. The record indicates that Lauri understood the Agreement to be an interim agreement and not the final word on these issues if the matter actually proceeded to dissolution. Lauri also alleges that Baskett advised her to wait until her husband filed for the divorce at

3

which time she could move the court to have the Agreement overturned. Lauri signed the Agreement in August of 1990 and departed for school in Tennessee. The executed agreement was filed with the District Court on August 31, 1990. On October 11, 1990, the court issued a decree of legal separation which incorporated the parties' Agreement.

Lauri discontinued her Tennessee schooling sometime early in 1991 for various reasons including her individual counseling sessions. She also met with William and their children several times in Tennessee and California. Lauri remained in Tennessee until approximately April of 1991, when she returned to Missoula in an unsuccessful attempt to resolve the marriage problems.

On May 17, 1991, William filed a motion to convert the legal separation to a final decree of dissolution; that motion was granted on May 21, 1991 by Judge Jack L. Green. Lauri contacted Baskett to have the order set aside and on July 1, 1991, Judge Green did set aside entry of decree of dissolution and removed himself as the judge. Judge John Henson also recused himself from the matter and Judge Ed McLean assumed jurisdiction of the matter on July 10, 1991.

Judge McLean held a hearing on July 31, 1991 regarding the issues of whether the decree of separation should be converted to a decree of dissolution and, secondly whether the Agreement should be set aside. At the July 31, 1991 hearing, Judge McLean carefully set forth time constraints for motions and briefs. Baskett did not

4

file any brief or make any response to the court's directive of July 31, 1991. Baskett sent Lauri a stipulation which she alleges she was confused about signing. She alleges that Baskett told her that it was the only means to get the money that William owed her, but she refused to sign the stipulation.

William again filed a motion to convert the decree of legal separation entered by the court on October 11, 1990, to a final decree of dissolution, incorporating all terms and conditions set forth in the Agreement. On November 22, 1991, after no filings were made by Lauri for a period of nearly two months, the court granted William's motion and entered the final dissolution decree, as requested, which incorporated the Agreement. With new counsel of record, Lauri now appeals to this Court.

The issue in the case at bar cannot adequately be reviewed by this Court because the final decree of dissolution contains no findings regarding the conscionability of the Agreement. The entire contents of the final decree dated November 22, 1991, is as follows:

> Upon Motion by Petitioner and good cause appearing, the Court orders that the Decree of Legal Separation entered by the Court on the 11th day of October, 1990, be converted to a Final Decree of Dissolution incorporating all terms and conditions set forth within the parties' Marital and Property Settlement Agreement as adopted by this Court in the Decree of Legal Separation previously referenced.

While we will not discuss every term in the Agreement, with regard to the property division aspects of § 40-4-202, MCA, that

5

statute establishes the criteria under which such property should be distributed. The court may "finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired." Section 40-4-202, MCA; also see In re Marriage of Scott (Mont. July 21, 1992), No. 92-081, Slip Op. at 5. The statute then lists factors which the court must consider in property distribution. The above-referenced decree contains no reference to the required criteria.

This Court is not unmindful of the fact that both parties signed the Agreement in August of 1990 as a prelude to the legal separation proceeding. However, the record indicates that there was substantial confusion regarding the parties' understanding of the long-term ramifications of the Agreement. Lauri repeatedly indicates that she believed the Agreement to be temporary or interim in nature while the couple pursued restoration of their marriage. The record indicates that with her departure to Tennessee fast approaching and her understanding of the temporary nature of the Agreement, she signed the Agreement. Lauri was apparently lead to believe that upon the initiation of actual divorce proceedings, the provisions of the Agreement could be replaced or revised.

In the case at bar the District Court should have addressed the conscionability of the Agreement especially in light of the circumstances and understandings of the parties; in particular, the fact that the Agreement was signed in August of 1990 and the final

6

decree of dissolution which incorporated it was entered in November of 1991. Accordingly, we vacate and remand this matter back to the District Court for findings as to whether or not the Agreement is conscionable. If found unconscionable, the decree of dissolution should be set aside and an equitable division of the property and all related matters should be addressed. Reversed and remanded to the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

August 6, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Noel K. Larrivee
LARRIVEE LAW OFFICES
334 East Broadway
Missoula, MT 59802

Richard Reep
REEP, SPOON & GORDON, P.C.
P.O. Box 9019
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy