NO. 93-048

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF THE CUSTODY AND
PARENTAL RIGHTS OF M.D., a/k/a M.S.,
    A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Michael Donahoe; Donahoe & Yeshe, Helena, Montana

        For Respondent:

        Hon. Joseph P. Mazurek, Attorney General; Christian
        D. Tweenten, Assistant Attorney General, Helena,
        Montana

        Mike McGrath, Lewis and Clark County Attorney;
        Carolyn A. Clemens, Deputy County Attorney, Helena
        Montana

        Randi Hood, Attorney for the Youth, Helena, Montana

Submitted on Briefs:  September 23, 1993

          Decided:  November 30, 1993

FILED

Filed:    NOV 30 1993

          Ed Smith
    CLERK OF SUPREME COURT
        STATE OF MONTANA

                          Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant James Lee Cameron (Cameron) appeals the order of the First Judicial District Court, Lewis and Clark County, which terminated his parental rights over his daughter, M.D. We affirm.

Cameron is M.D.'s natural father. On September 4, 1990, Cameron pled guilty under North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, to two counts of felony sexual assault. One count to which Cameron pled guilty alleged that he sexually assaulted M.D., who was eleven years old.

On November 15, 1990, the court sentenced him to twenty years with five years suspended on each count. Cameron appealed and we affirmed in State v. Cameron (1992), 253 Mont. 95, 830 P.2d 1284.

Cameron is incarcerated at the Montana State Prison. His expected discharge date is November 1998. He was denied parole in August 1992. The parole board determined that Cameron needed to complete phase II of the sex offender program before it would grant him parole.

Phase II of the sex offender program requires the offender to admit his wrongdoing. Cameron, however, maintains that he did not sexually assault M.D., and thus, he refuses to complete phase II of the program.

On July 17, 1991, the State filed a petition seeking a declaration that M.D. was a youth in need of care. On August 8, 1991, following a hearing, the court found that M.D. was a youth in need of care.

A social worker with the Lewis and Clark County Department of

2

Family Services (DFS) prepared a treatment plan and transmitted it to Cameron at the prison. Cameron refused to sign the plan.

On April 7, 1992, the State filed a petition to terminate Cameron's parental rights. The State sought to terminate Cameron's parental rights because: he was incarcerated for sexually assaulting M.D.: a treatment plan was not practical: and the length of his prison term precluded his ability to care for the needs of M.D.

Cameron filed a motion to dismiss and a hearing on the motion was held on August 19, 1992. The District Court denied the motion to dismiss on August 28, 1992.

On October 15, 1992, the court held a hearing on the State's petition to terminate Cameron's parental rights. At the hearing the State presented evidence that: 1) Cameron refused to sign the treatment plan: 2) Cameron had been incarcerated for more than one year; 3) the parole board would not grant Cameron parole until he completed phase II of the sex offender program: 4) Cameron had to admit that he sexually abused M.D. to complete phase II of the program: and 5) it was probable that Cameron would stay in prison until November 1998, since he continued to deny that he sexually abused M.D.

The District Court issued its findings of fact, conclusions of law, and order on November 20, 1992, and terminated Cameron's parental rights. This appeal followed.

We restate the issues as follows:

1. Did the petition for termination of Cameron's parental

rights state a claim upon which relief could be granted under § 41-3-609, MCA?

2. Was the District Court's decision to terminate Cameron's parental rights supported by substantial evidence?

3. Did the District Court improperly rely on Cameron's <u>Alford</u> plea to terminate his parental rights?

Since M.D. has been adjudicated a youth in need of care, we note that this determination meets the threshold requirement of finding dependency, abuse or neglect. In re B.H.M., C.M.M., & J.T.H. (1990), 245 Mont. 179, 186, 799 P.2d 1090, 1095. We presume the correctness of a district court's decision to terminate parental rights and we will not overturn that decision "unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion." In re S.P. (1990), 241 Mont. 190, 194, 786 P.2d 642, 644. Accordingly, our review extends to the record to determine if the trial court appropriately terminated Cameron's parental rights.

⊥

Did the petition for termination of Cameron's parental rights state a claim upon which relief could be granted under § 41-3-609, MCA?

Cameron contends that the State's petition lacked sufficient grounds for terminating his parental rights. He asserts that § 41-3-609(1)(c)(i), MCA, requires the implementation of a court-ordered treatment plan. He argues that, since no court-ordered treatment plan existed in his case, the allegations in the petition did not

4

satisfy § 41-3-609(1)(c)(i), MCA, and the court incorrectly terminated his parental rights. We disagree.

We have previously held that § 41-3-609, MCA, does not require the implementation of a court-ordered treatment plan in every case. In re C.L.R. (1984), 211 Mont. 381, 384-86, 685 P.2d 926, 928; B.H.M., 799 P.2d at 1094. In C.L.R., we held that § 41-3-609, MCA, did not require a treatment plan where the parent was incarcerated for a long period of time and the treatment plan was unworkable. 685 P.2d at 928. Moreover, the Legislature, in its first session after our decision in C.L.R., eliminated any doubt inherent in the statute when it added the following subsection:

> (4) A treatment plan is not required under this part upon a finding by the court following [a] hearing if:
>
> . . .
>
> (b) the parent is incarcerated for more than 1 year and such treatment plan is not practical considering the incarceration[.]

Section 41-3-609(4)(b), MCA.

Here, after the required hearing, the District Court found that Cameron was incarcerated for more than one year and a treatment plan was not practical because Cameron refused to complete phase II of the sex offender program at the prison. He also failed to sign the treatment plan proposed by DFS. As the District Court noted, Cameron "seems to think he can throw sand in the wheels of judicial proceedings and then take advantage of his action or lack thereof." We will not permit Cameron to complain of an error he created.

5

We conclude that the District Court correctly followed the statutory mandate of § 41-3-609, MCA. The court found that Cameron was incarcerated for more than one year and the treatment plan was not practical because Cameron would not complete phase II of the sex offender program and he would not sign the proposed plan. We hold that § 41-3-609, MCA, does not require the implementation of a court-ordered treatment plan in this case and, therefore, the petition stated a claim upon which the court could grant relief.

II

Was the District Court's decision to terminate Cameron's parental rights supported by substantial evidence?

Cameron argues, similar to his first argument, that the State did not prove that a court-ordered treatment plan existed, and therefore, the District Court should not have terminated his parental rights. This argument lacks merit.

Again, a court-ordered treatment plan is not required in this case. Section 41-3-609(4)(b), MCA. Thus, the court is only required to determine that:

> the child is an adjudicated youth in need of care and
> . . .

> the conduct or condition of the parent rendering [him]
> unfit is unlikely to change within a reasonable time[.]

Section 41-3-609(1)(c)(ii), MCA. Further, § 41-3-609(2), MCA, states :

> [i]n determining whether the conduct or condition of the
> parent[] is unlikely to change within a reasonable time,
> . . . . the court shall consider but is not limited to
> the following:

> . . .

6

(e) present judicially ordered long-term confinement of the **parent**[.]

Here, the District Court, in its findings and conclusions, noted that M.D. was designated a youth in need of care. The court concluded that Cameron's incarceration made him unfit to care for the physical, mental, emotional and psychological needs of M.D. The court also concluded that the situation was unlikely to change within a reasonable time because Cameron was unwilling to comply with recommended treatment and he remained in prison.

We conclude that the court's findings are supported by substantial evidence and its conclusions are well grounded in law. Cameron is incarcerated at the Montana State Prison and he will probably remain there until November 1998. We hold that the evidence was sufficient to support the court's decision to terminate his parental rights.

### III

Did the District Court improperly rely on Cameron's _Alford_ plea to terminate his parental rights?

Cameron argues that the court erred by using his _Alford_ plea to terminate his parental rights. Conversely, the State contends, and we agree, that the court did not rely on Cameron's _Alford_ plea to terminate his parental rights. Rather, the court terminated Cameron's parental rights because his incarceration made him unfit to care for the needs of M.D.

The nature of Cameron's _Alford_ plea is completely irrelevant to the termination of his parental rights. Although he pled guilty

7

with the _Alford_ plea, the court, in terminating Cameron's parental rights, only considered his incarceration, the length of his prison sentence and his refusal to complete sex offender treatment. See § 41-3-609(1)(c)(ii) and (2)(e), MCA.

We distinguish between Cameron's continuing refusal to comply with treatment and his _Alford_ plea, which he used to plead guilty. The District Court is not punishing Cameron, as he suggests, for using the _Alford_ plea. Rather, Cameron's continuing claim of innocence and his refusal to admit his wrongdoing has extended his stay at the prison.

We hold that the District Court did not use Cameron's _Alford_ plea to terminate his parental rights. We also hold that the District Court appropriately terminated Cameron's parental rights.

Affirmed.

_____
                                          Justice

We concur:.

_____
_____
_____
_____
                Justices

November 30, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael Donahoe
Attorney at Law
P. 0. Box 413
Helena, MT 59624

Hon. Joseph P. Mazurek, Attorney General
Christian D. Tweeten, Assistant
21.5 N. Sanders, Justice Building
Helena, MT 59620

Mike McGrath, County Attorney
Carolyn A. Clemens, Deputy
228 Broadway
Helena, MT 59601

Randi Hood
Attorney at Law
228 Broadway
Helena. MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy