No. 93-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF DECLARING
D.H. and F.H.

Youths In Need Of Care.

FILED

APR 28 1994

CLERK OF
STATE OF MONTANA COURT

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Chris P. Christensen, Attorney at Law,
            Kalispell, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General,
            Jennifer Anders, Assistant Attorney General,
            Helena, Montana

            Thomas J. Esch, Flathead County Attorney,
            Randy K. Schwickert, Assistant County
            Attorney, Kalispell, Montana

        For Youths:

            Robert Allison, Attorney at Law,
            Kalispell, Montana


                        Submitted on Briefs:   March 31, 1994

                                    Decided:   April 28, 1994

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On behalf of the Department of Family Services, the Flathead County Attorney filed a petition to terminate the parent-child relationship of Susan H. and her natural children, D.H. and F.H., in the Eleventh Judicial District Court in Flathead County. The District Court found that the children were abused and neglected, terminated Susan's parental rights, and awarded permanent custody of the children to the Department of Family Services. Susan appeals the order of the District Court. We affirm.

Susan raises the following issues on appeal:

1.    Did the District Court abuse its discretion when it concluded that Susan had abandoned D.H. and F.H.?

2.    Did the District Court abuse its discretion when it concluded that a treatment plan was not required for Susan?

3.    Was there substantial credible evidence to support the District Court's finding that previous efforts to counsel Susan had failed and that she was unlikely to change?

We find our resolution of the first issue dispositive, and therefore, will not address the remaining two issues.

### FACTUAL BACKGROUND

Susan H. and Duaine H. are the natural parents of twin girls, D.H. and F.H., who were born March 23, 1990, in Kalispell, Montana. Susan is also the mother of J.A. Only the parent-child rights between Susan and the twins are at issue in this case.

On September 26, 1990, Susan and her mother were arrested and incarcerated at the Flathead County Detention Center for their

2

involvement in a scheme to deliver a series of bad checks. Susan ultimately pled guilty to felony theft and accountability for issuing bad checks and was sentenced to a term of 17 years at the Women's Correctional Center in Warm Springs. She was denied parole in November 1992.

On the day of her arrest, Susan's mother telephoned an acquaintance, Susan Schraeder, to ask if Schraeder would babysit D.H. and F.H. When Schraeder went to pick up the twins, she was given a box containing a large supply of cereal, baby food, and formula. Susan and her mother did not return for D.H. and F.H. that day due to their arrest and incarceration. Susan's mother was released from jail, but was unable to care for the children. Duaine attempted to care for them, but in July 1991, having no job and no resources, he requested foster placement for D.H. and F.H. with the Schraeders, who then became licensed foster parents. Duaine was given a treatment plan and reunited with D.H. and F.H. in September 1991, but within two months, he was again relying on the Schraeders for the majority of the care and supervision of the twins. In December 1991, D.H. and F.H. were again placed with the Schraeders, where they have remained since that time.

Duaine was arrested for probation violation in February 1992. On June 19, 1992, the Flathead County Attorney, on behalf of the Department of Family Services (DFS) filed a petition for temporary investigative authority and protective services based on the allegation that the children were abused and neglected within the meaning of § 41-3-102, MCA. With the petition, an affidavit was

3

filed in which it was alleged that: (1) both parents were incarcerated due to criminal convictions; (2) the mother's lengthy prison sentence would cause her to be absent from the children's lives for a prolonged period; and (3) the father would not be released until August 1992 and prior to his incarceration, had failed to provide the minimum physical, emotional, and psychosocial needs of the children.

On October 19, 1992, the DFS filed a petition for permanent custody and authority to consent to adoption, and requested that D.H. and F.H. be declared youths in need of care.

Based upon evidence from the June 9, 1993, hearing, the District Court declared D.H. and F.H. youths in need of care, abandoned by their mother, whose best interests would be served by termination of the parent-child legal relationship with their natural mother. On November 2, 1993, Duaine voluntarily terminated his parent-child legal relationship with D.H. and F.H., consented to their adoption, and relinquished their legal custody to the DFS.

## STANDARD OF REVIEW

This Court has previously stated:

> We presume the correctness of a district court's decision to terminate parental rights and we will not overturn that decision "unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion." *In re S.P.* (1990), 241 Mont. 190, 194, 786 P.2d 642, 644.

*In re Custody of M.D.* (Mont. 1993), 864 P.2d 783, 785, 50 St. Rep. 1505, 1506. *See also In re Matter of R.A.D.* (1988), 231 Mont. 143, 753 P.2d 862.

4

However, that standard of review is inadequate for the following reasons. First, we have adopted a different standard of review for nonjury findings of fact than we apply to jury verdicts. *Interstate Prod. Credit Ass'n. v. DeSaye* (1991), 250 Mont. 320, 820 P.2d 1285. There, we stated:

> This Court will affirm the findings of a trial court sitting without a jury unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P. In comparison, this Court will affirm the verdict of a jury if there is substantial credible evidence in the record to support the verdict. . . . .
>
> Substantial credible evidence when used to support a jury verdict is fairly well understood; however, when substantial evidence is used in the clearly erroneous standard it is less clear. If a finding is not supported by substantial evidence it is clearly erroneous. The converse proposition that a finding supported by substantial evidence cannot be clearly erroneous is not true in a non-jury case. "Substantial evidence and clearly erroneous are not synonymous and a finding may be set aside, though supported by substantial evidence if found to be clearly erroneous." *W.R.B. Corp. v. Geer* (C.A. 5th 1963), 313 F.2d 750.
>
> We adopt the following three-part test to determine if a finding is clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[a] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.* (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. [Citations omitted].

*DeSaye*, 820 P.2d at 1287. This is the appropriate standard to be applied to purely factual findings in a proceeding to terminate parental rights. The second reason the previously articulated

5

standard of review for termination of parental rights is inadequate is that, as a general rule, we review conclusions of law to determine whether they are correct. *In re Marriage of Burris* (1993), 258 Mont. 265, 269, 852 P.2d 616, 618. This is also the appropriate basis for reviewing most conclusions of law in a termination proceeding.

However, we find that the conclusion that a child is abused and neglected involves a decision that is neither purely factual nor purely legal, and is analogous to a district court's determination of conscionability when reviewing marital and property settlement agreements.

> When it determines the conscionability of a marital and property settlement agreement, a district court
>
> > engage[s] in discretionary action which cannot be accurately characterized as a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court.

*In re Marriage of Caras* (Mont. 1994), 868 P.2d 615, 617, 51 St. Rep. 98, 99 (citing *In re Marriage of Hamilton* (1992), 254 Mont. 31, 36, 835 P.2d 702, 704-05).

In this case, Susan challenges the District Court's decision that her children were abused and neglected. Therefore, we review the District Court's decision to determine whether there was an abuse of discretion.

6

Did the District Court abuse its discretion when it concluded that Susan had abandoned D.H. and F.H.?

A district court must determine the presence of at least one of the threshold requirements set forth at § 41-3-609(1), MCA, to terminate a parent-child legal relationship. In satisfaction of that requirement, the District Court concluded under § 41-3-609(1)(b), MCA, that Susan abandoned D.H. and F.H.

Section 41-3-102(8)(d), MCA, states that a child is abandoned when the child is left

> under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child . . . .

Although Susan contends that she and Duaine intended to resume custody of the children, the statute requires that the parent "manifest a firm intention" to resume custody. The District Court found that the children have not lived with their mother since October 1990 (a period over two and one-half years by the time of the hearing) and that during this time, Susan "has never expressed an intention to the Schraeders or to the Department of Family Services to resume custody or make permanent legal arrangements for the care of the [children]."

The District Court also found:

> Since her transfer to the Women's Correctional Center in Warm Springs, Susan has never requested from

7

the Department or the Schraeders any visitation with the girls, nor has she initiated any telephone calls to [them]. She has, however, on occasion, sent them cards on holidays and one telephonic contact between Susan and the girls was initiated by Susan's mother on their second birthday.

These findings are supported by substantial evidence, are not clearly erroneous, and must be affirmed on appeal.

The evidence established that Susan willfully surrendered physical custody of her six-month-old twins to Susan Schraeder with the representation that it would be for the day. Three and one-half years later, the twins continue to reside with the Schraeders. There is no evidence in the record that Susan ever indicated to the persons having physical custody of the twins, that she intended to resume physical custody or attempted to make any permanent legal arrangements for the care of the children.

We have previously affirmed a finding of abandonment under similar circumstances. *In re Matter of M.J.D.* (1987), 225 Mont. 200, 205, 731 P.2d 937, 940. In that case, we concluded it was significant that the father had not informed his family or social workers of his intention to acquire custody until after termination proceedings had begun. *M.J.D.*, 731 P.2d at 940.

We conclude that the District Court did not abuse its discretion when it concluded that Susan's children had been abandoned by her, were "abused and neglected," and on that basis, terminated her parental rights.

Because we affirm the District Court's conclusion that Susan abandoned D.H. and F.H., and because abandonment is a sufficient

8

basis for termination of parental rights under § 41-3-609(1)(b), MCA, we need not determine whether there was a sufficient basis for termination under § 41-3-609(1)(c), MCA. The order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

April 28, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Chris Christensen
Attorney at Law
P.O. Box 1954
Kalispell, MT 59901

Hon. Joseph P. Mazurek, Attorney General
Jennifer Anders, Assistant
Justice Bldg.
Helena, MT 59620

Thomas Esch, County Attorney
Randy K. Schwickert, Deputy
P.O. Box 1516
Kalispell, MT 59901-1516

Robert Allison
Attorney at Law
130-5th St. E.
Kalispell, MT 59901


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy